**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-60612

HIBERNIA NATIONAL BANK,

Plaintiff-Appellee,

versus

LEONARD K. SONES, ET AL.,

Defendants,

LEONARD K. SONES, JR.; MYRTLE M. SONES,

Defendants-Appellants.

Appeal from the United States District Court
For the Southern District of Mississippi
(1:92-CV-77)

December 12, 1996

Before DAVIS, DENNIS, Circuit Judges and FALLON, District Judge.[1]

PER CURIAM:[**]

## BACKGROUND

On May 13, 1986, the appellants, Leonard K. Sones and Myrtle

M. Sones, executed a promissory note in favor of First National

---

[1]District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Bank of Covington [in Covington Louisiana] ["Bank"]. The promissory note provided for a line of credit not to exceed $150,000. The purpose of this transaction was to provide the Soneses' neighbors, Johnny M. Penton and Mike E. Penton, Jr., capital to finance a construction framing business venture. This note and the identical renewal note signed by the Soneses on June 10, 1986 contained a "MASTER NOTE" provision which provided: "First National Bank may make periodic advances ... from time to time, one or more times, aggregating up to the principal amount of this promissory note as shown on the face side hereof." On May 14, 1986 a deed of trust on the Soneses' property in Pearl River County, Mississippi, securing "all existing and future indebtedness," to include "all future and additional advances," was properly filed and recorded. Over the following months, several advances were made to the Pentons by the Bank and over $500,000 was paid back to the Bank.

By June 10, 1987, according to the testimony of Jerry Wiggins, the bank officer whom the Soneses transacted with, the line of credit was fully loaned out. On that date, the Sones renewed the May 13, 1986 promissory note. No payments were received by the bank after the renewal. First National Bank of Covington subsequently became insolvent and was taken over by the FDIC. First National's assets, including the note and the deed of trust signed by the Soneses, were subsequently sold to appellee, Hibernia National Bank, which filed a foreclosure suit to collect the

2

outstanding balance on the June 10, 1987 renewal note owed them by the Soneses. The district court for the Southern District of Mississippi, found that there was an outstanding debt of $149,666.70 and entered a judgment in favor of Hibernia against the Soneses for this amount plus interest and attorney's fees totaling $340,959.45, and ordering judicial foreclosure on the Soneses' property.

## DISCUSSION

The Soneses raise four issues on appeal:

### I. Sufficiency of the Evidence

First, the Soneses argue that pursuant to the promissory note of May 13, 1986 and its renewal of June 10, 1987, in order to collect the debt, Hibernia must present bank records evidencing a debt. The source of this argument is the following language found in the two promissory notes:

> [T]he records of Bank shall serve as prima facie evidence as to the unpaid and funded principal balance of this promissory note from time to time in the event that it should become necessary for Bank to commence an appropriate action seeking to collect the unpaid principal funded balance of this promissory note and interests, costs and attorney's fees in any court of competent jurisdiction.

A common sense reading of the above language does not mandate that in order to prove a debt, the bank is limited to using its records. Rather, it means that bank records will always be prima facie proof of a debt, but it does not preclude the use of other forms of

3

evidence to prove a debt. The evidence adduced was adequate to prove the existence of the Soneses' debt, although a detailed written documentation of payments and advances was not introduced. Wiggins testified at trial from his recollection the line of credit secured by the Sones' property was "maxed out" at "full capacity, $150,000." After his memory was refreshed by reference to a bank computer printout, he testified that the exact amount of the balance of the debt was $149,666.70. However, the printout was never introduced. Nevertheless, Wiggins' refreshed recollection suffices to prove existence and amount of the debt at the time the loan was renewed on June 10, 1987. The existence of this debt was, in substance acknowledged by the fact that the Soneses signed a renewal note on June 10, 1987. The Soneses have not introduced any evidence that any payments were made on the debt after they signed the renewal note.

## II. Does Louisiana or Mississippi Law Apply?

Next, the Soneses allege that Louisiana law applies to the deed of trust. At the time the deed of trust was signed, under Louisiana law the only form of mortgage that secured a line of credit was a collateral mortgage. Clearly, the requirements to properly effect a collateral mortgage were not complied with by the bank, thereby creating no security should Louisiana collateral mortgage law apply. However, we conclude that Mississippi law and not Louisiana law applies with respect to the enforcement of the

4

deed of trust.

Both the original note dated May 13, 1986 and the note renewal dated June 10, 1987 provide that Louisiana law governs the loan transaction and "all things, matters and transactions related thereto...." However, conflict of law rules dictate that the law of the situs of the secured property govern foreclosure procedures applicable to the real estate within the state regardless of any choice of law provision in the contract evidencing the underlying debt. *See, e.g.,* Restatement (Second) of Conflicts of Law § 229 (1971); David B. Young, *Mortgages and Party Autonomy in Choice of Law*, 45 Ark.L.Rev. 345, 347-49 (1992). *See also Jones v. Jones*, 523 So.2d 874 (La. App. 4th Cir. 1988); *Clinton Capital Corp. v. Straeb*, 589 A.2d 1363 (Sup. Ct. N.J. 1990). This is a foreclosure suit. We have found no Mississippi cases directly on point, but we conclude that Mississippi courts would follow the same rule. The Soneses have not cited any convincing authority to the contrary.

## III.  Is the Dragnet Clause in the Deed of Trust Effective?

The deed of trust signed by the Soneses contained the following provision:

> This Deed of Trust shall also secure any and all other indebtedness of Debtors due to Secured Party with interest thereon as specified, or of any one of the debtors should there be more than one,  whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter arising at any time before cancellation of this Deed of Trust.  Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise.

The provision is known as a "dragnet clause."  It is well settled in Mississippi that a dragnet clause may secure future debts of a borrower.  *Cochran v. Deposit Guaranty Nat's Bank*, 509 So.2d 1045 (Miss. 1987).  Dragnet clauses are, however, narrowly construed against the drafter when there is uncertainty or ambiguity as to the parties' intent.  *Merchants Nat'l Bank v. Stewart*, 608 So.2d 1120, 1125-26 (Miss. 1992).  But, if the dragnet clause clearly and unambiguously indicates that the collateral secures other debts, then the court will not inquire further into the parties' intent and will enforce the clause.  *Id*. at 1126.

The language "**any and all other indebtedness**" contained in the above dragnet clause has been interpreted to include only debts similar  to the primary debt secured by the Deed of Trust.  *Id*.  In *Stewart*, the Mississippi Supreme Court held that a subsequent advance was not secured by a dragnet clause very similar to the one in this case because the first obligation and subsequent obligation allegedly secured by the dragnet clause were dissimilar.  The first obligation was a line of credit to be used for crop production and irrigation while the subsequent obligation  was a loan used to purchase land.  The subsequent obligation was also fully secured by the land, FmHA guarantees, and second liens  which the court reasoned "further indicat[ed] that they were not intended to be included under the [dragnet clauses]."  *Id*.  In the present case,

6

however, the renewal note was executed for the same reason that the first note was issued and thus represented a debt inherently similar to that underlying the first note.

## IV. The Sones Cannot Establish a Fraud in the Factum Defense

Finally, the Soneses allege that they were victims of a fraud in the factum that caused them to sign the June 10, 1987 renewal note. We find that the Soneses cannot establish fraud in the factum.[1] Fraud in the factum occurs when a party signs a document "without full knowledge of the character or essential terms of the instrument." *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989). The Soneses allege that they were not aware of the character or essential terms of the renewal note when it was signed on June 10, 1987. However, Mr. Sones testimony showed that he was aware that credit was being extended in a piecemeal fashion; that is that funds were not released all at once. The Soneses were also aware that the June 10, 1987 note was a renewal of the prior note. Thus, because it is undisputed that they had knowledge of the terms and conditions of the first note, it follows that they understood the

---

[1]Because we find that the Soneses cannot establish a fraud in the factum defense, we do not need to decide whether or not a fraud in the factum defense is excepted to the application the *D'oench Duhme* doctrine, codified as 12 U.S.C. § 1823(e). The Supreme Court in *Langly v. FDIC*, 484 U.S. 86, 93-94 (1987), stated in *dictum* that fraud in the factum may constitute an exception from the application of the *D'oench Duhme* doctrine. Nor do we need to inquire into the intricacies of the *D'oench Duhme* doctrine. In a nutshell, the *D'oench Duhme* doctrine as codified in 12 U.S.C. § 1823(e), provides that agreements not contained in the failed bank's records are invalid against the FDIC and its assignees.

7

terms and conditions of the identical renewal note.

## CONCLUSION

For the foregoing reasons the judgment of the district court is AFFIRMED.